IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
SENIOR JUDGE WALKER D. MILLER

Civil Action No. 07-cv-01197-WDM-MJW

WADE COLE,

      Petitioner,

v.

ARI ZAVARIS, Warden, and
JOHN SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

---

Miller, J.

      This matter is before me on Petitioner Wade Cole's Petition Under 28 U.S.C. § 2254

For Writ of Habeas Corpus ("Petition") (Docket No. 3).  Respondents answered the Petition

(Docket No. 27) and Petitioner filed a traverse (Docket No. 28).  As Petitioner is proceeding

*pro se,* I must construe his pleadings liberally and hold him to a "less stringent standard."

*Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner,* 404 U.S.

519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).  After reviewing the pertinent portions

of the record in this case including the Petition, the Answer, the Traverse, and the state

court record, I conclude that the Petition should be denied.

<u>Background</u>

      On March 21, 2002, after a jury trial, Petitioner was convicted of enticement of a

child, a violation of Colo. Rev. Stat. § 18-3-305.  The facts that led to his conviction are

as follows:  in February 2001, Petitioner began an internet correspondence with

someone he believed to be a fourteen-year old female child.  The female child was actually a police officer posing as an underage child in an Internet sting operation. From February 2001 to July 2001, Petitioner communicated with the alleged child on a weekly basis.  Their correspondence often contained sexual content and discussed the sexual acts that were to take place between Petitioner and the alleged child.  Finally, in July 2001, Petitioner arranged a meeting with the alleged child at a local shopping mall. When Petitioner arrived at the mall for the meeting, he was arrested.  At the time of his arrest, Petitioner was a registered sex offender due to a 1993 conviction for sex assault on a child in Boulder County.

On August 2, 2001, Petitioner was charged with attempted sexual assault on a child, a class five felony, and enticement of a child, a class four felony.  The People later amended the enticement of a child count to a class three felony on the grounds that it was Petitioner's second offense.  A jury trial was held in Douglas County District Court (the "Trial Court") from March 19 to March 21, 2002.  After trial, the jury returned a guilty verdict on the enticement count, but was unable to reach a unanimous verdict on the count of attempted sexual assault on a child.  Petitioner subsequently admitted to the previous sex offense, and the People dismissed the attempted sexual assault on a child count.  On July 15, 2002, the Trial Court sentenced Petitioner to an indeterminate sentence of ten years to life.

Petitioner filed a timely notice of appeal with the Colorado Court of Appeals ("CCA").  In his appeal, Petitioner raised the following issues: (1) whether the defense of factual impossibility was a defense to the completed crime of enticement of a child; (2) whether the People should have been required to prove that there was an actual child

2

involved in the crime; (3) whether entrapment was a possible defense; (4) whether the Trial Court erred in denying Petitioner's motion to suppress his confession; (5) whether the Trial Court erred in admitting at trial evidence seized from Petitioner's house; and (6) whether evidence from Petitioner's computer files was illegally seized.

The CCA denied Petitioner's claims and affirmed the conviction on April 29, 2004. *See People v. Cole*, No. 02CA1693 (Colo. App. April 29, 2004) (unpublished decision) ("*Cole I*") (Exhibit D). Petitioner filed a petition for a writ of certiorari with the Colorado Supreme Court on June 30, 2004, which was denied on September 13, 2004. On March 7, 2005, Petitioner filed a motion to quash his conviction pursuant to Colo. R. Crim. P. 35(c) with the Trial Court, alleging twenty-seven different claims of error.  The Trial Court denied Petitioner's Rule 35(c) motion on July 21, 2005.  Petitioner appealed the denial of his Rule 35(c) motion to the CCA, and the CCA affirmed the Trial Court on February 15, 2007. *See People v. Cole*, No. 05CA1656 (Colo. Ct. App. Feb. 15, 2007) (unpublished decision) ("*Cole II*") (Exhibit L).  Petitioner did not appeal the CCA decision and the mandate issued on April 16, 2007.

Petitioner then filed the instant habeas corpus, making over thirty arguments[1]: (1) the People did not prove each element of the enticement charge because they did not establish that there was a child under the age of fifteen involved in the crime; (2) the introduction and use of Petitioner's statements at trial violated his constitutional rights;

---

[1]Petitioner divided his Petition into several subsections, including claims raised on direct appeal, claims raised on post-conviction appeal, and new claims, with the claims separately numbered within each subsection.  For convenience, I have renumbered all of the claims sequentially in the order in which they appear in the Petition.

(3) the Trial Court erred by allowing evidence that was outside the scope of Petitioner's consent to search; (4) the Trial Court should have granted a hearing on Petitioner's Rule 35(c) motion; (5) Petitioner's warrantless arrest was in violation of his Fourth Amendment right because it was not supported by probable cause; (6) Petitioner had a First Amendment right to freedom of speech in the e-mails that he sent to the child ; (7) Petitioner was entrapped as a matter of law and the CCA failed to consider the merits of Petitioner's entrapment claim; (8) the prosecution withheld "exculpatory" evidence by failing to investigate whether the Internet chat room Petitioner used to converse with the child was an adults-only chat room; (9) the Trial Court judge was biased; (10) the Trial Court ignored the strict liability requirements of Colo. Rev. Stat. § 18-1-503.5(3); (11) Petitioner was charged "multiplicitously"; (12) the People did not prove every element of the crime of enticement; (13) the enticement statute was unconstitutional as applied to Petitioner because enticement of a child over the Internet was not a crime at the time of Petitioner's arrest; (14) items obtained during a search of Petitioner's apartment were improperly admitted into evidence; (15) the police improperly destroyed evidence by failing to maintain e-mails; (16) Petitioner's conviction was illegally based upon his own words; (17) an investigator assigned to Petitioner's case committed perjury; (18) the conviction was based upon insufficient evidence; (19) Petitioner's Fourteenth Amendment right to privacy was violated; (20) Petitioner's Fourteenth Amendment right to equal protection was violated; (21) Petitioner was improperly convicted of an attempt to attempt a crime of enticement; (22) the jury was improperly instructed; (23) Petitioner received ineffective assistance of counsel for various reasons; (24) Petitioner's right to speedy trial was violated when he was coerced to waive that right; (25) the conviction

4

was obtained through an impermissible constructive amendment of the enticement

charge; (26) the police committed numerous felonies in order to obtain Petitioner's

arrest; (27) the cumulative effects of the errors caused a structural error in Petitioner's

trial, requiring reversal; (28) Petitioner's arrest was pretext to allow the police to search

his car and apartment; (29) the felony complaint was flawed and the state courts failed

to consider this issue; (30) the CCA deliberately violated Petitioner's due process and

equal protection rights when it denied his requests for certain documents and also

granted the People's requests for continuances; (31) the Trial Court lacked subject

matter jurisdiction in this case; (32) the laws cited in the felony complaint did not have

proper enacting clauses; and (33) the Colorado Revised Statutes are of unknown and

uncertain authority.

<u>Standard of Review</u>

In the course of reviewing state criminal convictions in federal habeas corpus

proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle*

*v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

"When a federal district court reviews a state prisoner's habeas petition pursuant to 28

U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's

custody *simpliciter*."  *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal

quotations and citations omitted).  The exhaustion of state remedies requirement in

federal habeas cases dictates that a state prisoner must "give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the

State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838,

845 (1999).

Because Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review.  *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412.  Furthermore, clearly established law consists of Supreme Court holdings

6

> in cases where the facts are at least closely-related or
> similar to the case *sub judice*.  Although the legal rule at
> issue need not have had its genesis in the closely-related or
> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry

pursuant to § 2254(d)(1).  *See id.* at 1018.  If a clearly established rule of federal law is

implicated, I must determine whether the state court's decision was contrary to or an

unreasonable application of that clearly established rule of federal law.  *See Williams*,

529 U.S. at 404-05.

> A state-court decision is contrary to clearly
> established federal law if: (a) "the state court applies a rule
> that contradicts the governing law set forth in Supreme Court
> cases"; or (b) "the state court confronts a set of facts that are
> materially indistinguishable from a decision of the Supreme
> Court and nevertheless arrives at a result different from [that]
> precedent."  *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th
> Cir. 2006)] (internal quotation marks and brackets omitted)
> (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is
> commonly understood to mean 'diametrically different,'
> 'opposite in character or nature,' or 'mutually opposed.'"
> *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable
> application of clearly established federal law when it
> identifies the correct governing legal rule from Supreme
> Court cases, but unreasonably applies it to the facts.  *Id.* at
> 407-08.  Additionally, we have recognized that an
> unreasonable application may occur if the state court either
> unreasonably extends, or unreasonably refuses to extend, a
> legal principle from Supreme Court precedent to a new
> context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one.

7

*See Williams*, 529 U.S. at 409-10.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411.  "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671.  "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2).  *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002).  Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).  Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178.  "[T]his

8

'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id.*

Discussion

1.    Failure to State Cognizable Federal Claim

Before addressing the exhaustion argument raised by Respondents, I find that Petitioner's fourth and thirtieth claims for relief must be dismissed because the facts alleged in support of these claims do not state cognizable federal constitutional claims. In claim four, Petitioner asserts that the Trial Court should have held an evidentiary hearing on his Rule 35(c) motion.  Petition at 15.  In claim 30, Petitioner alleges that during his Rule 35(c) appeal, the CCA deliberately violated his due process and equal protection rights when it denied his requests for various documents and granted requests by the People for continuances to file their answer briefs.  Petition at 59-70.  I find that these claims do not challenge the validity of Petitioner's conviction or sentence, because they do not assert that Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Instead, Petitioner seeks to challenge the state courts' treatment of his postconviction motion.  However, there is no federal constitutional right to postconviction review in the state courts.  *See Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987).  A claim of constitutional error that "focuses only on the State's post-conviction remedy and not the judgment which provides the basis for [the petitioner's] incarceration . . . states no cognizable federal habeas claim."  *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) (citations omitted); *see also Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) (noting that a petitioner's challenge to state "post-conviction procedures on their face and as applied

9

to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding).  Accordingly, Petitioner's fourth and thirtieth claims must be dismissed.

##### 2.   Exhaustion of State Remedies and Procedural Default

Next, Respondents assert that Petitioner failed to exhaust adequately many of his claims.  Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan*, 526 U.S. at 842; *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  A claim has been exhausted when it has been "fairly presented" to the state court.  *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement. *Picard,* 404 U.S. at 278; *see also Nichols v. Sullivan,* 867 F.2d 1250, 1252 (10th Cir. 1989). Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard,* 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam).  Instead, a claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted.  *See Duncan v. Henry,* 513 U.S. 364, 365-66 (1995) (per curiam).  Finally, "[t]he exhaustion requirement is not one to be

overlooked lightly." *Hernandez v. Starbuck,* 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper,* 967 F.2d 392, 398 (10th Cir. 1992).

In support of their argument that various claims are not exhausted, Respondents specifically argue that many of the issues were raised either in the Trial Court Rule 35(c) proceedings and/or in Petitioner's opening brief on post-conviction appeal, but were not presented as federal constitutional issues.  Answer at 14-17.  I have reviewed Petitioner's Rule 35(c) Motion, a copy of which is attached to Respondents' Answer as Exhibit H, and Petitioner's opening brief on post-conviction appeal, a copy of which is attached to Respondent's Answer as Exhibit J.  I find that claims nine, ten, thirteen, fourteen, fifteen, eighteen, twenty-two, twenty-one, twenty-four, twenty-five, twenty-six, twenty-seven and twenty-nine were not presented as federal constitutional claims during Petitioner's state court proceedings.

A.    Claims 9, 10, 13, 14, 15, 18, 21, 22, 24-27, 29

Upon careful review of Petitioner's state court postconviction proceedings, I find that Petitioner's presentation of the claims set forth above does not satisfy the fair presentation requirement for the simple reason that he failed to connect these issues to any claim under federal law.  He did not cite to any specific provision of the federal Constitution, he relied in large part on Colorado state law, and he did not label the claims as "federal" claims.  *See Baldwin v. Reese*, 541 U.S. 27, 32-33 (2004). Petitioner failed to set forth any argument which would have alerted the state appellate court to particularized claims of violations of his federal constitution rights such as those

11

he brings in this Court.  Moreover, the Appellee did not recognize or treat Petitioner's claims as raising any federal constitutional questions.  *See* Exhibit K.  The CCA also reviewed these claims as solely raising issues of state law, not as federal constitutional issues.  *See Cole II*.

In order to allow the state courts the opportunity to act on or correct the constitutional violations Petitioner alleges, he must do more than just invoke magic words which may possibly be interpreted to raise a constitutional claim.  Instead, he must provide legal theory explaining how the decisions of the state court violated the particular federal constitutional rights he claims were violated.  *See, e.g., Anderson*, 459 U.S. at 78 (claim on direct appeal that jury instruction was reversible error did not fairly present due process challenge to instruction for habeas exhaustion purposes); *Picard*, 404 U.S. at 276-77 (holding that habeas petitioner failed to fairly present federal claim to state court where, despite presenting all necessary facts, petitioner failed to assert specific argument that he later tried to raise in federal court); *see also Thomas v. Gibson*, 218 F.3d 1213, 1221 n. 6 (10th Cir. 2000) (holding that petitioner's general state court claim was insufficient to exhaust his later, more specific federal habeas claim).  Finally, the fact that Petitioner specifically cited or referred to the federal Constitution or federal case law in connection with various other claims in his direct appeal, his Rule 35(c) motion and his opening brief on post-conviction appeal further illustrates that he did not present these claims as federal ones.

Therefore, I find that Petitioner failed to exhaust state remedies for claims nine, ten, thirteen, fourteen, fifteen, eighteen, twenty-one, twenty-two, twenty-four, twenty-five, twenty-six, twenty-seven and twenty-nine.  If a petitioner has not exhausted his

state remedies, his petition is generally denied without prejudice so that he may present his claims to the state court. *See Coleman*, 501 U.S. at 731. However, if "the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claims procedurally barred," then the petitioner is considered to have procedurally defaulted his claims and federal habeas review is precluded. *Id.* at 735 n. 1. Indeed, a federal district court "does not address issues that have been defaulted in state court on an independent and adequate procedural ground, unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998) (citations omitted). Application of this procedural default rule in the habeas corpus context is based on comity and federalism concerns. *See Coleman,* 501 U.S. at 730. Petitioner's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy,* 38 F.3d 1128, 1130 (10th Cir. 1994).

Although Petitioner failed to exhaust state court remedies for the numerous claims set forth above, I may not dismiss the claims for failure to exhaust state remedies if Petitioner no longer has an adequate and effective state remedy available to him. *See Castille v. Peoples,* 489 U.S. 346, 351 (1989). No further state court remedy exists because any future claim would be denied as successive under Colo. R. Crim. P. 35(c)(3), either because it was raised or resolved in a prior appeal or postconviction proceeding, *see* Rule 35(c)(3)(VI), or because it could have been presented in an appeal or postconviction proceeding previously brought, *see* Rule 35(c)(3)(VII). Therefore, the claims that Petitioner failed to exhaust are procedurally defaulted.

13

To demonstrate cause for his procedural default, Petitioner must show that some objective factor external to the defense impeded his ability to comply with the relevant procedural rule.  *See Murray v. Carrier,* 477 U.S. 478, 488 (1986); *United States v. Salazar,* 323 F.3d 852, 855 (10th Cir. 2003).  A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496; *see also United States v. Cervini,* 379 F.3d 987, 991-92 (10th Cir. 2004).  A "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare."  *Schlup v. Delo,* 513 U.S. 298, 321 (1995).  To demonstrate a fundamental miscarriage of justice, Petitioner first must "support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial."  *Id.* at 324.  Petitioner then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327.

Petitioner fails to provide any basis for a finding of cause and prejudice or a fundamental miscarriage of justice in this action.  Therefore, I find that claims nine, ten, thirteen, fourteen, fifteen, eighteen, twenty-one, twenty-two, twenty-four, twenty-five, twenty-six, twenty-seven and twenty-nine, which Petitioner failed to exhaust, are procedurally barred.

B.     Claims 31-33

Respondents further argue that Petitioner concedes that claims thirty-one, thirty-two and thirty-three were never presented in any form to the state courts.  Answer at 22.  In claims 31-33, Petitioner attempts to challenge the subject matter jurisdiction of the

14

Trial Court, arguing that the statutes used to convict him are not valid, or "do not constitutionally exist as they do not conform to certain constitutional prerequisites." Petition at 74.  Specifically, Petitioner argues that the laws cited in his felony complaint did not have proper enacting clauses, and therefore, that the Colorado Revised Statutes "are of an unknown and uncertain authority."  *Id.* at 83.  Petitioner concedes that the issue of the subject matter jurisdiction of the Trial Court "has not been raised previously," but argues that "subject matter jurisdiction cannot be conferred by waiver or consent and may be asserted at any time."  *Id.* at 71.  I disagree with this argument, because I note that the exhaustion requirement of 28 U.S.C. § 2254(b)(1)(A) does not contain an exception for jurisdictional claims.  As such, while Petitioner may be able to raise subject matter jurisdiction in the Trial Court at any time, he is incorrect that he is able to assert these unexhausted claims in the instant proceeding.

Pursuant to Colo. R. Crim P. 35(c)(3)(VII)(d), "any claim that the sentencing court lacked subject matter jurisdiction" is an exception to the well-established Colorado rule of criminal procedure that "claims that could have previously been brought on direct appeal or in postconviction proceedings must be denied."  *People v. Valdez*, 178 P.3d 1269, 1275 (Colo. App. 2007) (citing Colo. R. Crim P. 35(c)(3)(VII)).  As such, while Petitioner's claims related to the subject matter jurisdiction of the trial court may be unexhausted, they are not procedurally barred.  Moreover, when a habeas petition includes both exhausted and unexhausted claims, the traditional rule has been that the district court must dismiss the entire "mixed" petition.  *See Rose v. Lundy*, 455 U.S. 509, 510 (1982).  However, pursuant to § 2254(b)(2), which has been amended since *Rose v. Lundy* was decided, I now have the discretion to deny petitions containing

15

unexhausted claims on the merits.  *See Moore v. Schoeman*, 288 F.3d 1231, 1235

(10th Cir. 2002) (noting that individual, unexhausted habeas claims may be denied on

the merits); 28 U.S.C. § 2254(b)(2) ("A [petition] for a writ of habeas corpus may be

denied on the merits, notwithstanding the failure of the applicant to exhaust the

remedies available in the courts of the State.").  Therefore, I decline to dismiss this

matter as a mixed petition because I find that Petitioner's subject matter jurisdiction

claims lack merit, as set forth below.

Petitioner asserts that the trial court lacked subject matter because he was

convicted under Colo. Rev. Stat. § 18-3-305, a statute that he alleges was published in

the Colorado Revised Statutes without an enacting clause.  Petition at 76-83.  It is true

that the Colorado Constitution requires inclusion of an enacting clause in and

publication of each state law.  *See* Colo. Const. art. V, § 18 & art. XVII, § 8.  However,

Petitioner does not dispute that the statute under which he was convicted, Colo. Rev.

Stat. § 18-3-305, was published with an enacting clause in the Session Laws of

Colorado.  *See* Colo. Rev. Stat. § 24-70-223(1) (providing for such publication).  The

Sessions Laws satisfy the enacting clause requirement of the Colorado Constitution.

*See People v. Washington*, 969 P.2d 788, 790 (Colo. App. 1998) ("The Colorado

Revised Statutes are the official compilation of the Session Laws of Colorado, the latter

containing the official publication of the enactments of the General Assembly.").  For this

reason, I find claims thirty-one, thirty-two and thirty-three to be without merit.  *See*

*Stevens v. Colorado*, 18 Fed. Appx. 779, 780 (10th Cir. Sept. 17, 2001) (unpublished

decision) (finding habeas claim that Colorado Revised Statute was published without an

enacting clause to be without merit).

16

3.      The Merits of Petitioner's Exhausted Claims

I find that Petitioner's remaining claims were fairly presented as federal

constitutional claims to the state courts and, therefore, will review the merits of each

claim, as set forth below.

A.      Claims One, Twelve and Sixteen

In claim one, Petitioner asserts that the People did not prove each element of the

charge of enticement because they failed to establish that a child under the age of

fifteen was involved in the crime.  Petition at 10.  In claim twelve, Petitioner again

asserts that the People were not required to prove that there was a child under the age

of fifteen involved in the crime.  *Id.* at 31.  In claim sixteen, Petitioner argues that his

conviction was illegally based upon his own words and, therefore, that the People did

not meet their burden of proof with respect to the charge of enticement.  *Id.* at 37.

Liberally construed, *see Haines*, 404 U.S. at 520-21, these claims all appear to assert

that Petitioner's conviction was improper because the People did not prove that an

actual child was involved in the crime.  Accordingly, I will address these as one claim

that challenges whether the People were required to prove beyond a reasonable doubt

that an actual child was involved as an element of the crime of enticement of a child.

Respondents argue that these claims raise only state law issues, because they

challenge only the elements of the crime of enticement as defined by Colorado law.

Answer at 17-18.

Petitioner raised this argument in his direct appeal, arguing that enticement of a

child defines a completed crime, and not an inchoate crime, and therefore, proof of each

element is required.  Exhibit A at 12.  Petitioner apparently takes issue with the fact that

17

the jury was instructed as to the law of criminal attempt in Colorado, and argued that

"[t]hough the word 'attempts' appears in the definition of the enticement offense, the

word modifies only a small portion of the statutory language and does not render the

offense an inchoate offense." *Id.* at 14.   Therefore, Petitioner argued that because

enticement of a child describes a completed offense, "[t]he child's age is not only an

element of the offense, it is a strict liability element which depends solely on the actual

circumstance (the age of the child) rather than on the defendant's perception of the

child's age."  *Id.* at 15.

The Colorado Court of Appeals addressed Petitioner's argument that there was

no child and therefore, no crime, during its review of his direct appeal.  The state court

reasoned as follows:

> Section 18-3-305 provides:
>
> A person commits the crime of enticement of a child if he or she invites or persuades, <u>or attempts</u> to invite or persuade, a child under the age of fifteen years to enter any vehicle, building, room, or secluded place with the intent to commit sexual assault or unlawful sexual contact upon said child. (Emphasis added).
>
> Initially, we reject defendant's contention that § 18-3-305 describes only a completed crime.  The statute specifically describes two separate ways in which enticement of a child may be committed: (1) a completed crime of inviting or persuading a child to enter a place with the intent to engage in sexual conduct with the child, and (2) an incomplete crime of <u>attempting</u> to invite or persuade a child to enter a place with the intent to engage in sexual conduct with the child.
>
> In this case the jury was only instructed under the attempt portion of the statute.
>
> Attempted crimes focus on the criminal purpose of the defendant rather than the harmful effect of the defendant's actions, which is the focus of completed crimes.  *People v. Krovarz*, 697 P.2d 378, 381 (Colo. 1985) ("culpability for criminal attempt rests primarily upon the actor's purpose to

cause harmful consequences"); *People v. Derrera*, 667 P.2d 1363, 1367 (Colo. 1983) ("Criminal attempt is a crime in which the defendant's purpose is to effect a criminal result.").

It is appropriate to punish both types of conduct because the actor's purpose to cause harm may "flower into harmful conduct at any moment." *People v. Thomas*, 729 P.2d 972, 976 (Colo. 1986) (quoting *People v. Krovarz*, *supra*, 697 P.2d at 381).

Because the conduct charged here was defendant's attempt to entice a child under § 18-3-305, we also reject defendant's contention that the prosecution was required to prove that an actual child was involved.

Section 18-1-504(1), C.R.S. 2003, provides that "[a] person is not relieved of criminal liability for conduct because he engaged in that conduct under a mistaken belief of fact, unless, as relevant here, the mistake negatives the culpable mental state required for commission of the offense. "If the defendant does every act within his power to commit an offense, and would have committed the completed offense if the facts had been as he believed them to be, then he may not escape criminal liability." *People v. Borrego*, 738 P.2d 59, 60 (Colo. App. 1987) (applying § 18-1-504 to a claimed defense of mistake of fact).

Thus, under § 18-1-504 defendant's mistaken belief that he was communicating with a fourteen-year-old child, when no such child existed, does not preclude criminal liability unless it negatived his intent to commit sexual assault on a child. Here, to the contrary, defendant's mistaken belief actually established that intent.

Generally, a defendant's mistaken belief of fact is not a defense to attempted crimes. *See Darr v. People*, 193 Colo. 445, 447 (1977) ("The modern trend is to hold that a mistake of fact is not a defense to attempted theft by receiving."); *see also Osborn v. United States*, 385 U.S. 323 (1966) (questioning the continued validity of the doctrine of impossibility in the law of criminal attempt) (citation omitted).

In *Darr*, the supreme court broadly rejected the defense of mistake of fact in criminal attempt cases. *See also People v. Sprouse*, 962 P.2d 300, 304 (Colo. App. 1997) (relying on *Darr* and concluding "the defense of factual or legal impossibility is not available in a prosecution for the crime of attempt") *rev'd on other grounds*, 983 P.2d 771 (Colo. 1999).

Accordingly, we conclude that defendant's mistaken belief as to the age of his intended victim did not relieve him of criminal responsibility for the crime of enticement of a child under § 18-3-305, and therefore, the trial

court did not err in denying his motion for judgment of acquittal.

*Cole I* at 27-30.

"State law determines the parameters of the offense and its elements and a federal court may not reinterpret state law." *Tillman v. Cook*, 215 F.3d 1116, 1131-32 (10th Cir. 2000) (citing *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975); *Estelle*, 502 U.S. at 67-68; *Richmond v. Embry*, 122 F.3d 866, 870 (10th Cir. 1997)).  A state court's "interpretation of the state . . . statute is a matter of state law binding on this court" in habeas proceedings.  *Parker v. Scott*, 394 F.3d 1302, 1319 (10th Cir. 2005) (quoting *Missouri v. Hunter*, 459 U.S. 359, 368 (1983)).  I therefore must accept the state court's interpretation of Colo. Rev. Stat. § 18-3-305, and the applicability of the mistake of fact or impossibility doctrine to Colo. Rev. Stat. § 18-3-305.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citations omitted).  Moreover, I note that my habeas review of this case is not concerned with the wisdom of Colorado's policy regarding the applicability of the defense of impossibility to Colo. Rev. Stat. § 18-3-305, but whether this decision was contrary to or an unreasonable application of a clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

In *Osborn*, the Supreme Court dismissed the "impossibility" defense of a defendant who had attempted to convey a bribe to a prospective juror through an intermediary who was secretly working for the government.  *Osborn*, 385 U.S. at 333. In doing so, the Supreme Court noted that "[w]hatever the continuing validity of the doctrine of 'impossibility' with all its subtleties, may continue to have in the law of

20

criminal attempt, that body of law is inapplicable here." *Osborn*, 385 U.S. at 434-35; *see also United States v. Aguilar*, 515 U.S. 593, 605 (1995) (noting that in *Osborn*, the Court had "expressed its reservations about the continuing validity of the doctrine of impossibility," and reiterating those reservations) (internal quotations omitted)).

In applying the habeas corpus test of whether a state court decision is contrary to or unreasonably applies clearly established federal law, federal law is "clearly established" by holdings of the Supreme Court, as opposed to dicta, as of the time of the relevant state court decision. *Williams*, 529 U.S. at 412. The rule sought by Petitioner must have been dictated or compelled by the United States Supreme Court. *Id.* at 362. Although *Osborn* and its progeny expressed "reservations" about the defense of impossibility in crimes of attempt, I do not find any clearly established Supreme Court law regarding this issue, and Petitioner has provided none. *See Osborn*, 385 U.S. at 434-35; *Aguilar*, 515 U.S. at 605. Therefore, the state court's conclusion that the defense of impossibility does not apply is not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, I find that claims one, twelve and sixteen are without merit and must be dismissed.

B.    Claim Two

In claim two, Petitioner asserts that his statements were unconstitutionally admitted in violation of *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Petition at 12-13. Specifically, Petitioner asserts that the Trial Court erred in denying the motion to suppress, because some of his statements to the police were the result of custodial interrogation without the benefit of a *Miranda* warning. *Id.* at 12. Petitioner argues that:

The trial court found that law enforcement questioned [Petitioner] after his

21

arrest, but before reading him his *Miranda* rights.  After reading him his rights, after obtaining what police thought was an inculpatory statement, they continued questioning.  Although the state elected not to use the statements at trial, by admitting them as evidence, the court made a statement that constitutional violations can be arbitrarily overlooked.  This could have had an adverse effect if [Petitioner's] lawyer had been effective enough to present a defense and [Petitioner] had elected to testify in his own behalf; . . . this placed [Petitioner] in the untenable and impermissible position of having to choose between forfeiting his right to testify or risking impeachment with what could have been seen by the jury as inculpatory statements.

Petition at 12.

The CCA found the following with regard to Petitioner's suppression arguments:

Defendant next contends that the trial court erred in denying his motion to suppress certain statements made to the police.  However, even if we accept his argument, we conclude any error was harmless beyond a reasonable doubt because defendant's statements were not presented to the jury.  *See Chapman v. California*, 386 U.S. 18 (1967).

Defendant's argument that the denial of his motion [to suppress] improperly influenced his decision not to testify was raised for the first time in his reply brief.  Therefore, we decline to consider it here.  *See People v, Hall, supra*, (court may decline to consider an issue raised for the first time in his reply brief).

*Cole I* at 30-31.

The Self-Incrimination Clause of the Fifth Amendment guarantees every individual that, if taken into official custody, he shall be informed of important constitutional rights and be given the opportunity knowingly and voluntarily to waive those rights before being interrogated about suspected wrongdoing.  *See Miranda*, 384 U.S. at 436.  The CCA applied the proper standards and determined that any error was harmless because none of Petitioner's post-*Miranda* statements were presented to the jury.  *See Cole I* at 30-31.

I agree that any possible error in denying Petitioner's motion to suppress his

post-*Miranda* statements was harmless.  In § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" set forth by *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  *Fry v. Pliler*, 551 U.S. 112, (2007).  Pursuant to *Brecht*, a constitutional error does not warrant habeas relief unless I conclude that it "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.  If the evidence is balanced so evenly that I am in grave doubt about whether the error meets this standard, I must hold that the error is not harmless.  *O'Neal v. McAninch*, 513 U.S. 432, 436-37 (1995).  I make this harmless error determination based upon my review of the entire state court record.  *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

     I have reviewed the state court record and I do not find that denial of Petitioner's motion to suppress "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.  Clearly, Petitioner's post-*Miranda* statements had no impact on the jury's verdict because these statements were never presented to the jury.  As a result, I agree with the state court that, even assuming an error occurred, the error was harmless and Petitioner is not entitled to relief on this claim.

     To the extent that Petitioner now attempts to assert that denial of the motion to suppress influenced his decision not to testify at trial, Petitioner raised this issue for the first time in the reply brief of his direct appeal, and the CCA declined to consider it for that reason.  *See Cole I* at 31.  Pursuant to Colorado law, an issue raised for the first time in a reply brief is not properly before the appellate court.  *See People v. Czermerynski*, 786 P.2d 1100, 1107 (Colo. 1990).  Petitioner did not re-assert this claim

23

in his post-conviction proceedings.  When a state court declines to address a prisoner's claim because the claim is procedurally barred, the claim is procedurally defaulted in a federal habeas proceeding.  *See Coleman*, 501 U.S. at 729-30.  Here, the state court concluded that the petitioner was procedurally barred from bringing this claim.  *Cole I* at 31.  I may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can show either (1) cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) that a failure of this court to consider the claims will result in a fundamental miscarriage of justice.  *English,* 146 F.3d at 1259 (citing *Coleman,* 501 U.S. at 749-50; *Steele,* 11 F.3d at 1521).  Petitioner has not argued cause and prejudice or fundamental miscarriage of justice.  Consequently, I find that claim two must be dismissed in its entirety.

C.   Claims Three, Five and Twenty-Eight

Petitioner asserts three other claims related to alleged state court violations of his Fourth Amendment right.  In claim three, Petitioner argues that the Trial Court erred in allowing evidence to be introduced at trial that was outside the scope of his consent to search.  Petition at 13-15.  He argues that his consent to search his residence for his computer and computer hardware did not authorize the police to search his entire residence, and that the police "conducted a thorough, complete, general rummaging of the type the Fourth Amendment does not allow."  *Id.* at 13.  In claim five, Petitioner alleges his warrantless arrest violated his Fourth Amendment right because the police did not have probable cause.  *Id.* at 17-19.  In claim twenty-eight, Petitioner alleges that his arrest was a pretext to allow the police to search his car and apartment.  *Id.* at 56-

24

57.

The Fourth Amendment protects against unreasonable search and seizure and is generally enforced through the exclusionary rule. *See, e.g., Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976). "The purpose of the exclusionary rule is not to redress the injury to the . . . victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974). Although habeas review is generally available for constitutional violations, *see* 28 U.S.C. § 2254(a), due to the nature of a Fourth Amendment violation and remedy, a federal court's review is limited for alleged Fourth Amendment violations. *See Stone*, 428 U.S. at 494. In *Stone*, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* This limitation on federal habeas corpus review is grounded on the determination that the purposes behind the exclusionary rule do not require that it be applied during federal habeas review. *Id.* The Supreme Court noted that, in the federal habeas corpus context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.*

Although the Supreme Court has not set forth a precise meaning of the phrase "opportunity for full and fair litigation," the Tenth Circuit has determined that it:

includes, but is not limited to, the procedural opportunity to raise or

> otherwise present a Fourth Amendment claim.  It also includes the full and
> fair evidentiary hearing contemplated by *Townsend* [*v. Sain*, 372 U.S. 293
> (1963)].  Furthermore, it contemplates recognition and at least colorable
> application of the correct Fourth Amendment constitutional standards.

*Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978).  "Thus, a federal court is

not precluded from considering Fourth Amendment claims in habeas corpus

proceedings where the state court willfully refuses to apply the correct and controlling

constitutional standards."  *Id.*

Here, Petitioner does not deny that he was provided with an evidentiary hearing

in the state court to determine the merits of his constitutional claims.  As Respondents

point out, a hearing on Petitioner's Motion to Suppress Evidence as a Result of Illegal

Arrest, Motion to Suppress Search of Vehicle, Motion to Suppress Statements and

Motion to Suppress Search of Residence was held on February 4, 2002 and continued

to February 7, 2002, when the Trial Judge issued his ruling.  *See* Transcripts: Vol. 6,

pgs. 8-137; Vol. 7, pgs. 5-39.  Further, Petitioner raised the issue of the search of his

residence on direct appeal to the Colorado Court of Appeals.  *See* Exhibit A at 15.  He

then raised the issue of his warrantless arrest and his claim that his arrest was merely

pretext to search his car and house during his postconviction proceedings.  *See* Exhibit

H at 6-7; Exhibit J at 2-3.  Petitioner does not assert that these proceedings were not

"full and fair," but instead, merely presents various disagreements with the rulings of the

state courts.  *Gamble*, 583 F.2d at 1161.

However, the record demonstrates that the procedural opportunity to raise or

otherwise present Petitioner's various Fourth Amendment claims was clearly afforded to

him.  While the Colorado state courts looked to state case law in making their decisions

on Petitioner's allegations, the rulings in the state cases which were cited are solidly based in Fourth Amendment precedent as set forth by the United States Supreme Court. *Cole I* at 31-33; *Cole II* at 32, 34, 38. Under this precedent, the CCA proceeded to determine that, based on the entire record before it, there was no constitutional concern present with regard to Petitioner's arrest or the resulting search of his house. Petitioner has failed to present any well-pled facts or any facts at all from which it can be inferred that the CCA failed to recognize or willfully refused to apply the correct and controlling constitutional standards in this regard, and no such evidence is apparent from the record. *See id.* Petitioner merely disagrees with the result, and would like this Court to reconsider these issues *de novo*. However, that is not my function nor an appropriate review to be undertaken in a federal habeas case. Accordingly, I find that claims three, five and twenty-eight must be dismissed.

   D. Claim Six

  In claim six, Petitioner argues that he had a First Amendment right to freedom of speech in the e-mails he sent to the alleged child. Petition at 19-21. He appears to assert that Colo. Rev. Stat § 18-3-305 is unconstitutionally overbroad in light of the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). In rejecting Petitioner's First Amendment claim, the CCA held that "there was no violation of defendant's First Amendment guarantees because a defendant does not have a First Amendment right to attempt to persuade a child to engage in sexual activity." *Cole II* at 3.

  As a preliminary matter, I find that Petitioner's reliance on *Ashcroft* is misplaced. In *Ashcroft*, the Supreme Court held that portions of the Child Pornography Prevention

Act of 1996 were overbroad and unconstitutional because the statute prohibited virtual

child pornography, i.e., images created without the use of real children. *Id.* at 255. The

Supreme Court noted:

> The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it. The government 'cannot constitutionally premise legislation on the desirability of controlling a person's private thoughts.' First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end. The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought.
>
> To preserve these freedoms, and to protect speech for its own sake, the Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct. The government may not prohibit speech because it increases the chance an unlawful act will be committed 'at some indefinite time. . . . There is here no attempt, incitement, solicitation, or conspiracy. The Government has shown no more than a remote connection between speech that might encourage thoughts or impulses and any resulting child abuse. Without a significantly stronger, more direct connection, the Government may not prohibit speech on the ground that it may encourage pedophiles to engage in illegal conduct.

*Ashcroft*, 535 U.S. at 253-54 (citations omitted).

In this case, Petitioner was convicted of attempted solicitation of a child, pursuant

to Colo. Rev. Stat. § 18-3-305(1), which provides that:

> A person commits the crime of enticement of a child if he or she invites or persuades, or attempts to invite or persuade, a child under the age of fifteen years to enter any vehicle, building, room, or secluded place with the intent to commit sexual assault or unlawful sexual contact upon said child. It is not necessary to a prosecution for attempt under this subsection (1) that the child have perceived the defendant's act of enticement.

This legislation is not directed at "controlling a person's private thoughts," *Ashcroft*, 535

U.S. at 253, but at proscribing sexual relationships between adults and children. Here,

the People presented evidence that Petitioner thought that he was communicating with a fourteen year old child, that Petitioner discussed having a sexual relationship with the fourteen year old child, and that Petitioner went to the mall for the purposes of meeting the child.  The State presented to the jury, and proved beyond a reasonable doubt, that Petitioner used e-mails, the speech that he alleges was protected, in an attempt to persuade someone he believed was a child to engage in illegal sexual activity.

Moreover, he took the substantial step of setting up the meeting and driving to the mall towards completing the crime of enticement of a child.  This is not the type of speech protected by the Supreme Court in *Ashcroft*, where the Court specifically noted that no attempt or solicitation was involved in the speech.  *Ashcroft*, 535 U.S. at 253-54.

Moreover, Petitioner does not point to any other Supreme Court cases that support his position, and I can find none.  With respect to his arguments relating to unconstitutionality of the Colorado statute, Petitioner has not shown that his conviction for attempted enticement of a child is contrary to or an unreasonable application of federal law, as set forth by the Supreme Court in *Ashcroft*.  Therefore, I find that claim six lacks merit and must be dismissed.

E.    Claim Seven

Petitioner alleges in claim seven that he was entrapped as a matter of law.  In the Rule 35(c) motion, and the subsequent appeal, he also cited federal case law relating to the affirmative defense of outrageous government conduct, which is based on the Due Process clause and is distinct from the defense of entrapment.  *United States v. Sneed*, 34 F.3d 1570, 1577 (10th Cir. 1994) (outrageous government conduct defense entails only an examination of government's conduct and is available when entrapment

29

defense might be unavailable due to predisposition; two recognized situations are excessive government involvement in creation of a crime and coercion).  The CCA, in rejecting this claim, held that "[D]efendant did not raise, and is not now entitled to raise, an entrapment defense.  Entrapment is an affirmative defense, and therefore, one must admit the act before he is entitled to claim the defense."   Exhibit L at 3-4.  To the extent that Petitioner relies on the state affirmative defense of entrapment, this claim fails because it is not a federal issue.  *Vega v. Suthers*, 195 F.3d 573, 583 (10th Cir. 1999).

If Petitioner's claim is based on the defense of outrageous government conduct, specifically government creation of a crime, the claim also fails.[2]  The outrageous governmental conduct defense "is an extraordinary defense reserved for only the most egregious circumstances. It is not to be invoked each time the government acts deceptively or participates in a crime that it is investigating. Nor is it intended merely as a device to circumvent the predisposition test in the entrapment defense."  *United States v. Mosley*, 965 F.2d 906, 910 (10th Cir.1992).  Excessive government involvement in the creation of a crime occurs "when the government engineers and directs the criminal enterprise from start to finish and the defendant contributes nothing more than his presence and enthusiasm."  *Sneed*, 34 F.3d at 1577.  This was plainly not the case here, as Petitioner was the instigator of the meeting with the person he believed to be a child, and carried on an extensive and sexually explicit correspondence with that person for some time.  *United States v. Garcia*, 411 F.3d 1173 (10th Cir. 2005)

---

[2]I will assume without deciding that if the government's conduct was sufficiently outrageous to amount to a violation of Petitioner's federal due process rights, this could provide a basis for habeas relief.

30

(government's conduct was not outrageous where agent posed in chat room as a mother with young daughters and defendant himself suggested that the "mother" send sexually explicit photographs of her children and meet with him so that he could engage in sexual activities with the "daughters").

Similarly, the government's activities in leading Petitioner to believe he was corresponding with a child does not amount to outrageous conduct.  The Tenth Circuit has upheld denial of a habeas petition where the district court found that the government's deception in making a suspect believe that goods were stolen, when in fact they were not, was not outrageous government conduct.  *Switzer v. Berry*, 198 F.3d 1255, 1256 (10th Cir. 2000) (refusing to vacate petitioner's theft by receiving conviction); *see also United States v. Esch*, 832 F.2d 531 (10th Cir. 1987) (postal inspectors' undercover investigation of child exploitation activities was not outrageous governmental conduct, despite postal inspectors' encouragement of defendants to take and mail sexual photographs of children).  Accordingly, Petitioner's claim seven must be dismissed.

> ### F.    Claim Eight

Petitioner alleges in claim eight that the prosecution deliberately withheld exculpatory evidence by failing to disclose whether the Internet chat room Petitioner used to converse with the alleged child was located in an adults-only section of the Internet.  Petition at 24.  He argues the following with regard to this claim:

> The state knew this evidence existed and that the defense wanted it. [Petitioner's] trial attorney asked Investigator Penry in every hearing if he had set his sting up in an area of the Internet that was 'adult only'. Penry would give evasive answers every time . . . in spite of the fact that, according to him, he single-handedly set up and initiated the sting.

At a hearing on Feb. 4, 2002, the defense attorney asked once again for that information . . . with Penry giving his usual evasive answers. . . .[T]he prosecution objected to the line of questioning. His reason for the objection was that 'this is discovery'. Thus, by his own words, the prosecutor proves he knew that, not only was the information sought discovery, but that it was material to the defense. It being discovery and material, he was ***required*** to turn it over to the defense; . . . .

That the information is exculpatory is also self-evident. If [Petitioner] was confining his activities to 'adult only' areas of the Internet, the state claims of his intent die completely.

Petition at 25 (emphasis in original; citations omitted).

The CCA found the following with respect to Petitioner's claim that the

prosecution failed to disclose exculpatory material:

[W]e reject defendant's claim under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), that the prosecution failed to disclose exculpatory material. The prosecution was not required to produce evidence that the area in which defendant was browsing and e-mailing was an adult area of the Internet. This information is not exculpatory because the e-mails show defendant thought he was conversing with a child, regardless of the categories in which the e-mails were exchanged.

*Cole II* at 33.

The Supreme Court held in *Brady,* 373 U.S. at 87, that the failure to disclose

exculpatory evidence violates due process "irrespective of the good faith or bad faith of

the prosecution." However, "[t]he United States Constitution, as interpreted by *Brady*,

does not require the prosecution to divulge every possible shred of information that

could conceivably benefit the defendant." *United States v. Kennedy*, 29 F.Supp.2d 662,

680 (D. Colo. 1998) (citing *Moore v. Illinois*, 408 U.S. 786, 795 (1972) (finding "no

constitutional requirement that the prosecution make a complete and detailed

accounting to the defense of all police investigatory work on a case.")). Instead, a

petitioner seeking relief for a *Brady* violation must establish that: "(1) the prosecution

suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007) (quoting *Snow v. Sirmons*, 474 F.3d 693, 711 (10th Cir. 2007)).  Favorable evidence "is material . . . if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (citation and internal quotations omitted).  A "reasonable probability" of a different result exists when the suppression of evidence "undermines confidence in the outcome of the trial." *Id.* at 434.  Therefore, the question is not whether disclosure of the suppressed evidence would have more likely than not resulted in a different verdict, but whether in its absence, defendant received a fair trial, i.e., a trial which resulted in a verdict worthy of confidence. *Id.*  Finally, the question of "whether the government was required to disclose certain evidence under *Brady*" is a mixed question of law and fact. *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 827 (10th Cir. 1995).  Therefore, I must defer to the state court's decision rejecting Petitioner's *Brady* claim unless the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

After a thorough review of the record, I find that Petitioner's *Brady* claim fails for several reasons.  Initially, I note that no *Brady* violation exists where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source. *See, e.g., Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000).  That is, the *Brady* rule does not assist a defendant who is aware of the essential facts that would allow him to take

33

advantage of the exculpatory evidence at issue. *Coleman v. Mitchell*, 268 F.3d 417, 438 (6th Cir. 2001). In the present case, Petitioner has failed to establish that he, or his counsel, could not have produced evidence related to the fact that Petitioner was allegedly confining his activities to an "adults-only" section of the Internet. Second, the burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Petitioner has failed to show that the prosecution, or Investigator Penry, would have actually provided exculpatory testimony or evidence in his case. Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler*, 328 F.Supp.2d 711, 724 (E.D. Mich. 2004). Finally, Petitioner's assertion that this alleged discovery was exculpatory also lacks merit. As the CCA points out, even if Petitioner had limited his activities to an adults-only area of the Internet, the evidence presented at trial demonstrated that Petitioner was clearly told by the child that she was under fifteen years of age. Therefore, the existence of Petitioner's evidence would not have negated his mens rea. I do not find a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433 (citation and internal quotations omitted). Accordingly, I do not find that the state court's decision is contrary to or an unreasonable application of *Brady*. Petitioner is not entitled to habeas relief on this claim.

G.      Claim Eleven

Petitioner alleges in claim eleven that he was charged "multipliciously" with enticement of a child and criminal attempt to commit sexual assault on a child because

34

the elements of the crimes were the same.  Petition at 29-30.  Liberally construing claim

eleven, *see Haines*, 404 U.S. at 520-21, Petitioner appears to argue that he was

charged twice for the same act in violation of the Double Jeopardy clause.  The CCA

rejected Petitioner's contention that the elements of the crimes with which Petitioner

was charged were the same, holding that, "the crimes of enticement of a child and

attempted sexual assault of a child contain different elements, and the information here

did not violate principles of multiplicity."  *Cole II* at 5 (citing *People v. Abiodun*, 111 P.3d

462 (Colo. 2005); *compare* § 18-3-305(1), C.R.S. 2006, *with* § 18-3-405, C.R.S. 2006)).

In Colorado, attempted sexual assault on a child is committed when a person

"knowingly subjects another not his or her spouse to any sexual contact . . . if the victim

is less than fifteen years of age and the actor is at least four years older than the victim."

Colo. Rev. Stat. § 18-3-405.  Enticement of a child is committed when a person "invites

or persuades, or attempts to invite or persuade, a child under the age of fifteen years to

enter any vehicle, building, room, or secluded place with the intent to commit sexual

assault or unlawful sexual contact upon said child."  Colo. Rev. Stat. § 18-3-305(1).  The

test for whether a defendant has been charged twice for commission of the same crime

was set forth in *Blockburger v. United States*, 284 U.S. 299 (1932).  In *Blockburger,* the

Supreme Court stated that "the test to be applied to determine whether there are two

offenses or only one is whether each provision requires proof of an additional fact which

the other does not."  *Id.* at 304.  Further, "[i]n a habeas corpus proceeding under section

2254, a federal court should defer to a state court's interpretation of state law in

determining whether an incident constitutes one or more than one offense for double

jeopardy purposes."  *Mansfield v. Champion*, 992 F.2d 1098, 1100 (10th Cir. 1993).

After review of the relevant Colorado statutes, I find it clear that the crimes of attempted sexual assault on a child and enticement of a child require different proof and are separate and distinct crimes. Therefore, I find that the state court's determination was not contrary to, and did not involve an unreasonable application of, *Blockburger* and the claim should be dismissed.

> H.   Claim Seventeen

Petitioner alleges in claim seventeen that the prosecution improperly obtained his conviction through the use of perjured testimony. Petition at 38. Petitioner alleges that "[o]n the witness stand at trial, under oath, Investigator Penry admitted to perjury in an unrelated case, and then admitted that things in [Petitioner's] case did not happen 'quite' the way he had just said under oath that they happened." *Id.* at 38. With regard to this claim, the Trial Court found that:

> The evidence presented from Investigator Penry indicated that he had been untruthful at a hearing in an unrelated case and that he had corrected that untruthfulness in a later hearing in that case. There was no evidence presented that any testimony in Defendant's case was perjured. There is no truth to the allegations of the Defendant.

Exhibit I at 5.

With regard to Petitioner's allegation that the prosecutor solicited false testimony, a conviction obtained through perjury results in a due process violation if the prosecutor knowingly solicits the false testimony. *See United States v. Wolny*, 133 F.3d 758, 762 (10th Cir. 1998) (citing *Giglio v. United States*, 405 U.S. 150, 153 (1972) (citation omitted)). In this regard, the Petitioner must demonstrate: "(1) that the testimony was false, (2) that it was material, and (3) that it was knowingly and intentionally used by the government to obtain a conviction." *Id.* Significantly, a habeas petitioner must show

36

that a witness' statement was "indisputably false," rather than misleading, to establish a

denial of due process based on the knowing use of false or perjured testimony.  *Byrd v.*

*Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).  Allegations of prosecutorial misconduct

are mixed questions of law and fact.  *See Fero v. Kerby*, 39 F.3d 1462, 1473 (10th Cir.

1994).  However, in performing this review, a federal court may not second-guess a

state court's factfinding process unless, after review of the state-court record, it

determines that the state court was not merely wrong, but actually unreasonable.  *See*

*Weaver v. Bowersox*, 241 F.3d 1024, 1030 (8th Cir. 2001) (finding that state court's

determination of facts must be objectively unreasonable in light of evidence available to

the state court).  Mere disagreement with the state court's determination, or even

erroneous factfinding, is insufficient to grant relief if that court acted unreasonably.  *Id.*

"[D]eterminations of a factual issue made by a State Court shall be presumed to be

correct," unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Clear and convincing evidence is evidence that is "so clear, direct, weighty and

convincing as to enable the jury to come to a clear conviction, without hesitancy, of the

truth of the precise facts in issue."  *United States Fire Ins. Co. v. Royal Ins. Co.*, 759

F.2d 306, 309 (3rd Cir. 1985).  Here, Petitioner presents no such "clear and convincing"

evidence to rebut the correctness of the state court's factual findings with regard to the

testimony of Investigator Penry at trial.  *See* Petition at 38-39.  Instead, in essence

Petitioner requests that I reconsider and reweigh the evidence previously presented,

and redetermine the credibility of the witness.  That is not my function in federal habeas

review.  The evidence in the record fails to establish that the testimony in question was

false, and therefore, I find that federal habeas relief is not warranted as to claim

37

seventeen and it should be dismissed.

      I.    Claim Nineteen

Petitioner alleges in claim nineteen that his due process right to privacy pursuant to the Fourteenth Amendment was violated, because he had a reasonable expectation of privacy in his e-mail communications with the alleged child.  Petition at 40.  In addressing this claim, the CCA held, "defendant cites to no legal authority, and we are able to find none, supporting his contention that he had a reasonable expectation of privacy in an e-mail sent to a stranger."  *Cole II* at 36 (citing *State v. Turner*, 805 N.E.2d 124 (Ohio Ct. App. 2004) (holding that there is no expectation of privacy in e-mail correspondence enticing a child for sexual purposes)).

Petitioner apparently asserts a claim of violation of his substantive due process right pursuant to the Fourteenth Amendment.  The Fourteenth Amendment Due Process Clause "cover[s] a substantive sphere as well, barring certain government actions regardless of the fairness of the procedures used to implement them." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 766 (10th Cir. 2008) (internal quotation marks and citation omitted).  "In its substantive mode, the Fourteenth Amendment provides protection against arbitrary and oppressive government action, even when taken to further a legitimate governmental objective."  *Id.* at 767 (citation omitted). Substantive due process claims may encompass governmental action that either (1) infringes upon a fundamental right, or (2) shocks the conscience.  *Id.* at 768.

Petitioner fails to show that the challenged conduct infringes on a fundamental right or rose to a level to shock the conscience.  Petitioner was sending e-mails of a sexual nature to a complete stranger that he believed to be a fourteen year old girl.

38

Courts have refused to find a "broad-based fundamental right to engage in private sexual conduct," *see Seegmiller*, 538 F.3d at 771, much less a right to engage in sexual conduct with a minor.  A governmental decision to implement an Internet sting designed to catch sexual predators is not "the most egregious official conduct [that] can be said to be arbitrary in the constitutional sense."  *Lewis*, 523 U.S. at 846.  Moreover, Petitioner presents no support for the argument that such conduct violates the "decencies of civilized conduct," and I can find none.  *Id.*  Accordingly, I find that Plaintiff has failed to establish a substantive due process claim and claim nineteen must be dismissed.

J.      Claim Twenty

Petitioner alleges in claim twenty that he was denied his right to equal protection pursuant to the Fourteenth Amendment because the same e-mails could have been sent between two adults and a crime would not have been committed.  Petition at 41-44.  He argues that "[t]he Court of Appeals took away [Petitioner's] equal protection rights by effectively ruling that an imaginary child is the same as a real child and that an imaginary child can be a victim of a crime."  *Id.* at 42.  Although Petitioner's equal protection claim is difficult to discern, he apparently argues that the statute unlawfully distinguishes between (1) consenting adults who send sexually explicit e-mails to each other where one of the adults pretends to be a child and (2) an adult who sends sexually explicit e-mails to an actual child.  *Id.* at 43.  With regard to Petitioner's equal protection claim, the CCA found that:

> defendant appears to argue that his right to equal protection afforded by the Fourteenth Amendment to the United States Constitution was offended because an e-mail of a sexually explicit nature would have been permitted if it had been sent to an adult but not if it was sent to a child. We are unable to discern a viable equal protection claim from this

39

argument because adult and child e-mail recipients are not similarly situated.  We therefore reject it . . . .

*Cole II* at 36 (citing *People v. Young*, 859 P.2d 814 (Colo. 1993) (applying equal protection guarantees of the Fourteenth Amendment of the United States Constitution and the Colorado Constitution)).

The Equal Protection Clause of the Fourteenth Amendment requires that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  The Equal Protection Clause requires that all similarly situated individuals be treated alike.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  In general, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981).  If the challenged statute does not involve a protected classification, a petitioner must show that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose.  *See, e.g., Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  However, classifications based on race, alienage, or national origin, or which impact a fundamental right, are subjected to strict scrutiny and will be upheld only if they are narrowly tailored to serve a compelling government interest.  *City of Cleburne*, 473 U.S. at 440 (internal citations omitted).  To prevail on his equal protection challenge, a petitioner "must prove that there exist no legitimate grounds to support the classification" of which he complains.  *See United States v. Harding*, 971 F.2d 410, 413 (10th Cir. 1992).

Colo Rev. Stat. § 18-3-305 does not infringe on a fundamental right, and does

40

not distinguish among persons because of a protected classification.  Because age is

not a suspect class, rational basis review is the applicable standard.  *See Gregory v.*

*Ashcroft*, 501 U.S. 452, 470 (1991) ("[A]ge is not a suspect classification under the

Equal Protection Clause.").  Where governmental action does not jeopardize a

fundamental right or is not predicated on a suspect classification, it is "presumed to be

valid and will be sustained if [the governmental action] is rationally related to a

legitimate state interest."  *City of Cleburne*, 473 U.S. at 440.  Under the rational basis

test, Petitioner bears the burden of showing that the statute at issue in this case does

not further a legitimate state purpose by rational means.  *See Powers v. Harris*, 379

F.3d 1208, 1215 (10th Cir. 2004).

It is well-established that the State has an interest in enforcing its criminal laws in

a way that protects children from sexual predators and that public safety is an important

governmental objective.  Indeed, in *Osborne v. Ohio*, 495 U.S. 103, 109 (1990), the

Supreme Court recognized that "[i]t is evident beyond the need for elaboration that a

State's interest in 'safeguarding the physical and psychological well-being of a minor' is

'compelling' . . . ." (quoting *New York v. Ferber*, 458 U.S. 747, 756-58 (1982)); *cf. United*

*States v. Salerno,* 481 U.S. 739, 750-54 (1987) (recognizing that preventing crime is a

compelling interest); *Doe v. City of Lafayette, Ind.,* 377 F.3d 757 (7th Cir. 2004)

(upholding ban on convicted sex offender being present in parks because of a non

punitive governmental objective of keeping children safe) (collecting cases with similar

holdings).  Moreover, I find that sentencing laws that punish adults who target children

is rationally related to that purpose.  Because this state statute is rationally related to a

legitimate governmental purpose, no violation of the Equal Protection Clause results

41

from the statutory scheme challenged by Petitioner.  Therefore, I find that the state

court's resolution of this issue was neither contrary to nor an unreasonable application

of clearly established Federal law as determined by the Supreme Court, and therefore,

claim twenty must be dismissed.

K.     Claim Twenty-Three

In claim twenty-three, Petitioner alleges that he received ineffective assistance of

counsel because trial counsel failed to: (a) interview any potential witnesses by phone;

(b) conduct any investigation; and (c) recover documents mailed to Petitioner while he

was incarcerated.  It was clearly established when Petitioner was convicted that a

defendant has a right to effective assistance of counsel.  *See Strickland v. Washington*,

466 U.S. 668 (1984).  To establish that his trial counsel was ineffective, Petitioner must

demonstrate both that counsel's performance fell below an objective standard of

reasonableness and that counsel's deficient performance resulted in prejudice to his

defense.  *See id.* at 687-88.  In addition, "[j]udicial scrutiny of counsel's performance

must be highly deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's

performance falls within the range of "reasonable professional assistance."  *Id.*  It is

Petitioner's burden to overcome this presumption by showing that the alleged errors

were not sound strategy under the circumstances.  *See id.*  Under the prejudice prong,

Petitioner must establish "a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  *Id.* at 694.  If Petitioner

fails to satisfy his burden with regard to either prong of the *Strickland* test, his ineffective

assistance of counsel claim must be dismissed.  *See id.* at 697.  Finally, ineffective

assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.

Petitioner asserts that, "at a hearing on Dec. 4, 2001, [Petitioner's] attorney stood in front of the court and put on the record that he had done no investigations, had interviewed nobody, had not filed required motions, and in fact had done nothing on [Petitioner's] case." Petition at 47. Petitioner supports his contention that counsel failed to investigate by arguing that his counsel failed to call potential witnesses on the phone and failed to recover documentary evidence that was mailed to Petitioner in the county jail. *Id.* at 48. In his Rule 35(c) motion, Petitioner asserted that "a friend of the [Petitioner's], who is very active in [Petitioner's] lifestyle and who was a founder of one of the private clubs in the Denver Metro area that is exclusively for practitioners of this life-style spend the entire 8 months between [Petitioner's] arrest and his trial waiting for defense to call her so she could help with the [Petitioner's] defense and volunteer to be a witness for him." Exhibit H at 11. The documentary evidence to which Petitioner refers apparently also related to alternative sexual lifestyles, and was mailed to Petitioner by his potential witness. *Id.* at 12.

The Trial Court made the following findings with the respect to Petitioner's claim of ineffective assistance of counsel:

> The Court finds that the performance of trial counsel was not below the standard of competent defense counsel in this matter. Defendant's desire to call as a witness someone else who participated in Defendant's 'lifestyle' and was a founder of a private club that was exclusively for practitioners of this 'lifestyle' and a decision by trial counsel not to call this person does not give rise to a claim of ineffective assistance of counsel. The questionable value of this type of evidence certainly does not lend itself to a claim of ineffective assistance of counsel. The Court also notes, with respect to performance of trial counsel, that the jury in this case was hung on count 1, the charge of Criminal Attempt to Commit Sexual Assault on a Child and the Court, based on argument of defense counsel, partially granted a motion to suppress the search of the Defendant's vehicle and denied a request by the People to introduce evidence of other

43

transactions.  Trial counsel's performance did not fall below the standard for competent trial counsel.  Furthermore, even if the failure to call the 'lifestyle' witness can be characterized as falling below the standard of competent defense counsel, the Defendant has failed to establish that this would have affected the outcome of the verdict.  In this case the evidence was clear that the Defendant had contact with a person who he believed to [be] 14 years of age for the purposes of sexual contact.  The evidence was also clear that the Defendant left his residence and drove to a pre-arranged meeting with the person he thought was 14 years of age for the purpose of engaging in sexual contact.  The voluntary and warrant aided search of the Defendant's residence revealed several sexual devices.  The Court further finds that no hearing is necessary on this issue of ineffective assistance of counsel.

Ex. I at 7-8.

The CCA subsequently applied the proper standards from *Strickland* and rejected Petitioner's claim that counsel was ineffective by failing to interview or call at trial a "witness to testify regarding 'alternative sexual lifestyles.'"  *Cole II* at 37.  The CCA found that "Defendant has not shown how counsel's services fell below the standard of reasonableness established by prevailing professional standards or how, but for professional errors, the result of his trial would have been different."  *Id.* (citing *Davis v. People*, 871 P.2d 769 (Colo. 1994) (applying two prong test set forth in *Strickland*, 466 U.S. at 690).

Here, the transcripts from the trial support the state courts' finding that extensive efforts were made by the defense attorney on behalf of Petitioner, including suppression of evidence found in Petitioner's car as a result of a motion to suppress counsel filed on behalf of Petitioner.  Further, "[w]hether to raise a particular defense is one aspect of trial strategy, and informed strategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong."  *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (internal

44

quotation marks and citation omitted).   A petitioner who challenges his counsel's effectiveness because counsel decided not to interview a potential witness, must establish the decision not to interview was unreasonable from counsel's perspective at the time the decision was made.  *Strickland*, 466 U.S. at 689.  However, courts should refrain from using hindsight to second-guess counsel's tactical judgments.  *Id.* (citations omitted).  Here, Petitioner has made no showing that counsel's decision not to raise a defense related to Petitioner's alternative sexual lifestyle was not based on a valid strategic choice.  *See Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (finding that defendant bears "the burden of showing that counsel's action or inaction was not based on a valid strategic choice.").  Further, Petitioner has made no argument that would establish "a reasonable probability that, but for" counsel's failure to interview a witness regarding alternative sexual lifestyles, "the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Therefore, I find that the state courts' conclusion was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

Accordingly, it is ordered:

1.      Petitioner Wade Cole's Petition Under 28 U.S.C. § 2254 For Writ of
        Habeas Corpus ("Petition") (Docket No. 3) is denied.

2.      This case is dismissed with prejudice.

DATED at Denver, Colorado, on June 4, 2009.

BY THE COURT:


s/ Walker D. Miller

United States Senior District Judge